FILED     Fee Paid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

2025 DEC 18  PM 3:27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

**JOSE MARIA DeCASTRO,**
Plaintiff,

v. Case No. _____   CV25-11981-SB (ADS)

**CITY OF DUNCAN, OKLAHOMA;**
**SUZANNAHE SMITH,** in her individual and official capacities;
**CONNOR NEWMAN,** in his individual and official capacities;
**WILLIAM FITZHUGH,** in his individual and official capacities;
**BRIAN ATTAWAY,** in his individual and official capacities;
**DAVID HAMMOND,** in his individual and official capacities;
**DOES 1–10,** inclusive,
Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**(42 U.S.C. § 1983)**

**DEMAND FOR JURY TRIAL**

Plaintiff Jose Maria DeCASTRO, proceeding pro se, brings this action under 42 U.S.C. § 1983 for violations of his rights secured by the First and Fourth Amendments to the United States Constitution.

NATURE OF THE ACTION

1. A journalist arrives to investigate an officer's harassment of a female resident. Within twenty-four hours of exposing additional security failures, officials draft criminal charges against him. They hold those charges for three months, filing them only after he requests public records about potential corruption. The message: investigate us, and we will prosecute you.

2. On September 8, 2025, Plaintiff Jose Maria DeCASTRO—a journalist with 679,000 YouTube subscribers and 10 million monthly viewers—traveled to Duncan, Oklahoma to investigate reports that Officer Darius McReynolds was systematically harassing Heather Chandler. Ms. Chandler had been pulled over three times in three months under pretextual circumstances, including one stop where McReynolds claimed she "put her feet down" instead of using brakes—a fabrication later refuted by his own dash camera.

1

3. As Mr. DeCASTRO stated during his livestream: "This is Heather Chandler. It's the reason why we came today." He explained: "I came here from Los Angeles to try to use my reputation and my name to try to get this woman help."

4. During his investigation, Mr. DeCASTRO discovered unsecured AR-15 rifles visible in multiple patrol vehicles parked in a public lot. He documented these failures, reported them to Major Woods, and conducted himself professionally throughout.

5. Within twenty-four hours, Detective Suzannahe Smith signed an affidavit seeking Mr. DeCASTRO's arrest. The affidavit was notarized by Lori Adams—the same civilian employee who had confronted Mr. DeCASTRO's colleague the day before, demanding she stop photographing vehicles. But Defendants did not file these charges immediately. They waited three months.

6. In October 2025, Mr. DeCASTRO filed public records requests about Anthony Lee McAdams, a mentally ill man arrested by Duncan police. The investigation raised questions about excessive force and a conflict of interest: City Attorney David Hammond reportedly represents both the City and Mr. McAdams in his criminal case.

7. Only after these requests did Defendants file charges on December 10, 2025—using the three-month-old affidavit. The timeline reveals the motive:

• September 8: Investigation exposes McReynolds harassment + security failures

• September 9: Smith signs affidavit; Lori Adams notarizes despite conflict

• October 4: Public records request about McAdams case

• December 10: Charges filed using September 9 affidavit

8. The Constitution does not permit officials to criminalize journalism. New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). No reasonable officer could believe Mr. DeCASTRO's conduct violated any statute. The charges are pretextual, the retaliation is evident, and the constitutional violations are clear.

JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343. This action arises under 42 U.S.C. § 1983 and the First and Fourth Amendments.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because Plaintiff resides at 5350 Wilshire Blvd, PO Box 36143, Los Angeles, California 90036.

12. Venue is also proper under § 1391(b)(2) because a substantial part of events occurred in this district, including the chilling effect on Plaintiff's speech and ongoing First Amendment activities based here.

PARTIES

Plaintiff

13. Plaintiff JOSE MARIA DeCASTRO is a 51-year-old journalist and First Amendment auditor residing in Los Angeles, California. He operates the "Delete Lawz" YouTube channel with approximately 679,000 subscribers and 10 million monthly views. His work focuses on police accountability, constitutional rights education, and government transparency through established auditing practices recognized by federal courts as protected speech.

Defendants

14. Defendant SUZANNAHE SMITH is a Duncan Police Department detective who signed the September 9, 2025 probable cause affidavit. She is sued individually and officially. At all times, she acted under color of state law.

15. Defendant CONNOR NEWMAN is a Duncan Police Department detective whose vehicle (plate PYA020) Mr. DeCASTRO photographed on September 8, 2025. He participated in the decision to seek charges. He is sued individually and officially.

16. Defendant WILLIAM FITZHUGH is a Duncan Police Department lieutenant whose vehicle (plate QHB922) Mr. DeCASTRO photographed. He participated in the decision to seek charges. He is sued individually and officially.

17. Defendant DAVID HAMMOND is the City Attorney for Duncan, Oklahoma. Upon information and belief, Hammond simultaneously represents Anthony Lee McAdams in his criminal case—representing both the municipality whose police arrested Mr. McAdams and the defendant facing charges from that arrest. Hammond participated in, approved, or ratified the decision to prosecute Mr. DeCASTRO in retaliation for investigating this conflict. He is sued individually and officially.

18. Defendant BRIAN ATTAWAY is the Chief of the Duncan Police Department, sued individually and officially for implementing, ratifying, and failing to prevent the unconstitutional policies and customs described herein.

19. Defendant CITY OF DUNCAN, OKLAHOMA is a municipal corporation liable under Monell v. Department of Social Services, 436 U.S. 658 (1978).

20. Defendants DOES 1-10 are individuals whose identities are unknown but who participated in the violations alleged herein.

FACTUAL ALLEGATIONS

I. First Amendment Auditing as Protected Journalism

21. First Amendment auditing is citizen journalism that tests government compliance with constitutional rights, particularly the right to photograph and observe government operations in public spaces. Federal courts uniformly recognize it as protected speech. Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011); Fordyce v. City of Seattle, 55 F.4th 436 (9th Cir. 2022); Fields v. City of Philadelphia, 862 F.3d 353 (3d Cir. 2017).

22. This protection encompasses investigating government operations, gathering information about official conduct, and reporting findings to the public. Branzburg v. Hayes, 408 U.S. 665, 681 (1972).

II. The Heather Chandler Investigation

23. Before September 8, 2025, Mr. DeCASTRO received reports that Heather Chandler was being harassed by Officer Darius McReynolds through pretextual traffic stops—three times in three months.

24. The third stop was particularly egregious. McReynolds pulled Ms. Chandler over on her bicycle, claiming she "put her feet down to stop" instead of using brakes. Mr. DeCASTRO later obtained McReynolds' dash camera footage, which refuted this justification: Ms. Chandler had not put her feet down. McReynolds fabricated the reason for the stop.

25. Mr. DeCASTRO traveled to Duncan specifically to investigate this harassment. As he stated: "I want to stop the harassment of Heather Chandler. I don't want her to be stopped on her bike and say, 'Oh, you put your feet down and you didn't use your brakes.'"

III. September 8, 2025: The Investigation

26. On September 8, 2025, Mr. DeCASTRO arrived at the Duncan Police Department at 100 S. 7th Street. The department operates a public parking lot adjacent to its facilities, open and accessible to the public with no signs restricting access or prohibiting photography.

27. While in the lot, Mr. DeCASTRO observed unsecured AR-15 rifles plainly visible inside patrol vehicles bearing plates PYA020 (Detective Newman), QHB922 (Lt. Fitzhugh), and PLX241 (Sgt. Smith). The firearms were not in gun locks or locked compartments—simply lying visible on seats in vehicles parked in a public lot.

28. Following standard journalistic practice, Mr. DeCASTRO documented these observations through photographs and video. As part of his security investigation, he tested whether vehicle doors were locked by attempting to open them—standard practice for testing claimed security measures. All vehicles were locked. He did not gain entry, touch interior property, or damage any vehicle.

29. A civilian employee identified as "Miss Adams" (later identified as Lori Adams, a Duncan PD employee) confronted Mr. DeCASTRO's colleague and demanded she stop photographing. This violated clearly established law. The Tenth Circuit—governing Oklahoma—held: "The First Amendment protects the right to record the police." Irizarry v. Yehia, 38 F.4th 1282, 1295 (10th Cir. 2022).

30. Lori Adams's hostile confrontation demonstrated institutional hostility toward citizens exercising their right to observe police operations—and established her personal antagonism toward Mr. DeCASTRO's First Amendment activity.

31. Mr. DeCASTRO then met with Major Woods and professionally reported the unsecured firearms. Major Woods acknowledged the department "preferred" officers use AR-15 locks but indicated unsecured firearms in locked vehicles was within policy. At no point did Major Woods suggest Mr. DeCASTRO had committed any crime or ask him to leave.

32. Mr. DeCASTRO's investigation embarrassed Duncan PD: it exposed McReynolds' harassment of Ms. Chandler with fabricated stops, revealed dangerous security failures, documented Lori Adams's unlawful interference with photography, and would be seen by hundreds of thousands of people.

IV. September 9, 2025: Retaliation Begins

33. On September 9, 2025—one day after Mr. DeCASTRO's investigation—Detective Smith signed a probable cause affidavit seeking his arrest. Within twenty-four hours of being embarrassed, Defendants prepared criminal charges.

34. The affidavit does not describe criminal conduct. It describes constitutionally protected journalism: walking through a public parking lot, photographing vehicles, looking through windows, testing door handles to verify security, and remaining in publicly accessible areas.

35. The affidavit alleges violation of 21 O.S. § 1787 ("Loiter in/Injure/Molest Motor Vehicle"). But the affidavit's own description establishes no violation: the statute requires entering vehicles or manipulating controls; the affidavit acknowledges all vehicles remained locked; no entry was achieved; no mechanisms were manipulated.

V. The Lori Adams Notary Violation

36. The September 9 affidavit was notarized by Lori Adams—the same Duncan PD employee who had confronted Mr. DeCASTRO's colleague on September 8. Within twenty-four hours of demonstrating hostility toward his First Amendment activity, she notarized the affidavit charging him for that activity.

37. Oklahoma law requires notaries to act as impartial witnesses and prohibits notarization where the notary has a beneficial interest. 49 O.S. § 1(A). Lori Adams had disqualifying interests: employment by the prosecuting agency, demonstrated hostility toward the protected conduct on September 8, and institutional interest in retaliation. Her notarization violated Oklahoma's impartiality requirements and renders the affidavit procedurally defective.

VI. September-December 2025: The Strategic Delay

38. Critically, Defendants did not file charges on September 9. Despite having a notarized affidavit, they held it for three months. If they believed Mr. DeCASTRO committed crimes on September 8, they would have filed immediately. Instead, they waited to see if intimidation would work.

VII. October 2025: The McAdams Investigation

39. In October 2025, Mr. DeCASTRO's investigation expanded to include the June 20, 2024 arrest of Anthony Lee McAdams. Public records revealed: Mr. McAdams appeared to experience a mental health crisis (claiming to be "FBI agent undercover"); officers used baton strikes and K-9 deployment; Mr. McAdams showed signs of serious mental illness; despite obvious mental health needs, he was processed criminally rather than receiving psychiatric care.

40. Mr. DeCASTRO learned Mr. McAdams had received a substantial inheritance exceeding $120,000. Upon information and belief, David Hammond serves as both City Attorney and as legal counsel for Mr. McAdams—representing both the arresting municipality and the defendant. Questions arose regarding how Mr. McAdams's assets might be controlled if he were declared incompetent, particularly given his attorney's divided loyalties.

41. On October 4, 2025, Mr. DeCASTRO filed public records requests seeking arrest records, body camera footage, and evidence logs related to Mr. McAdams. These requests are protected First Amendment activity. McBurney v. Young, 569 U.S. 221, 234 (2013).

42. This investigation threatened to expose: McReynolds' harassment of Ms. Chandler, dangerous security failures, excessive force against a mentally ill person, Hammond's conflict of interest, and circumstances surrounding Mr. McAdams's inheritance that Defendants sought to prevent from public examination.

VIII. December 10, 2025: Deploying the Weapon

43. On December 10, 2025—three months after Detective Smith's affidavit, two months after the McAdams public records request—Defendants filed charges. District Attorney Dan Jacobsma filed an Information (Case No. CM-2025-539) charging three counts of violating 21 O.S. § 1787, based on pulling door handles on three vehicles.

44. Each count describes non-criminal conduct. Testing whether doors are locked in a public parking lot while investigating security failures is journalism, not "loitering," "injuring," "molesting," or "joy riding."

IX. The Charges Lack Probable Cause

45. Oklahoma Statute 21 O.S. § 1787 criminalizes: (1) entering a vehicle with intent to commit a crime; (2) climbing into/upon a vehicle; (3) attempting to manipulate vehicle controls; or (4) setting a vehicle in motion. Mr. DeCASTRO did none of these.

46. Testing whether a door handle opens is not "attempting to manipulate" vehicle controls. The statute targets attempts to start vehicles or engage mechanisms. Door handles are not "levers, starting device, brakes or other mechanism" within the statute's meaning.

47. The statute requires "intent then and there to commit any crime." Mr. DeCASTRO openly conducted his investigation, identified himself to Major Woods, explained his purpose, and reported findings. His intent was journalistic, not criminal.

48. Detective Smith's affidavit omits material exculpatory facts: Mr. DeCASTRO's identity as a journalist with 679,000 subscribers, his stated purpose investigating McReynolds' harassment, his open identification to Major Woods, his report of security failures to leadership, the public nature of the lot, and complete lack of criminal intent. A magistrate presented with complete information could not find probable cause. These omissions created false appearance of criminal conduct where none existed. Franks v. Delaware, 438 U.S. 154 (1978).

X. Municipal Liability Predicates

49. The violations resulted from institutional policies and customs reflecting Duncan's approach to accountability:

**Pattern of retaliation**: Lori Adams's September 8 confrontation followed by her September 9 notarization despite conflict; immediate preparation of charges one day after investigation; strategic three-month hold; filing after FOIA requests.

**Tolerance for misconduct**: McReynolds' pattern of fabricated stops targeting Ms. Chandler; Major Woods's acknowledgment that unsecured firearms are within policy; Hammond's dual representation creating corruption opportunities.

**Failure to train**: Adams didn't understand First Amendment rights; officers didn't understand retaliation prohibition; failure to recognize obvious conflicts of interest; inadequate mental health crisis response training.

**Ratification**: Major Woods knew of protected activity and Adams's unlawful interference but took no corrective action; Chief Attaway knew or should have known about charges targeting nationally known journalist; Hammond knew prosecution served to suppress investigation into his own conflict; City failed to discipline, correct, or withdraw charges despite constitutional defects.

XI. Ongoing Harm

50. Mr. DeCASTRO suffers ongoing irreparable injury:

- Active prosecution facing three years imprisonment and $1,500 fines

- Outstanding arrest warrant preventing travel to Oklahoma

- Chilling of protected speech—the message is clear: investigate us, face charges

- Suppression of investigations into McReynolds harassment, security failures, McAdams case, and Hammond's conflict

- Reputational harm portraying him as attempting vehicle theft to 679,000 subscribers

- Emotional distress from threat of arrest and imprisonment

- Economic harm threatening his journalism livelihood

- Restriction of liberty preventing continued investigation

51. First Amendment injuries cannot be adequately remedied by damages alone. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

CAUSES OF ACTION

COUNT I: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

Against All Defendants

52. Plaintiff incorporates all allegations above.

53. To establish First Amendment retaliation: (1) constitutionally protected activity; (2) actions that would chill a person of ordinary firmness; and (3) protected activity was a substantial motivating factor. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).

54. **Protected Activity**: Mr. DeCASTRO investigated McReynolds' harassment of Ms. Chandler, photographed vehicles and unsecured firearms, tested security measures, reported failures to Major Woods, filed public records requests about the McAdams case, and exposed Hammond's conflict. These activities lie at the core of First Amendment protection. Irizarry, 38 F.4th at 1295; Glik, 655 F.3d at 82; Branzburg, 408 U.S. at 681.

55. **Chilling Effect**: Criminal prosecution, arrest threat, imprisonment risk, and reputational harm profoundly chill speech. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 68 (1963). A reasonable person would reconsider investigating corruption if it meant charges held in reserve and filed strategically.

56. **Retaliatory Motive**: The evidence is compelling:

- Immediate preparation (September 9, one day after investigation)

- Lori Adams connection (confronted colleague September 8, notarized affidavit September 9)

- Strategic three-month delay (September 9 to December 10)

- Triggering event (filing after October FOIA requests about McAdams/Hammond)

- Content of charges (describes protected journalism, not crime)

- Lack of probable cause (demonstrates non-law-enforcement purpose)

- Absence of contemporaneous objection (Major Woods discussed cordially)

- Institutional threats (McReynolds exposure, security failures, McAdams investigation, Hammond conflict)

57. Even if Defendants claim they would have charged absent retaliation, no probable cause existed—no non-retaliatory reason to charge when conduct satisfied no statutory element. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

58. **Clearly Established Law**: Irizarry (10th Cir. 2022) established right to record police in Oklahoma's circuit; Glik (2011) established right to photograph police; Nieves (2019) prohibited retaliatory prosecution; Hartman (2006) prohibited using prosecution against critics. No reasonable officer could believe investigating harassment, photographing vehicles, testing security, or filing FOIA requests constitutes crime.

59. Defendants are not entitled to qualified immunity. Hope v. Pelzer, 536 U.S. 730 (2002).

60. The City is liable under Monell because retaliation resulted from the policies and customs described in paragraph 49.

COUNT II: FOURTH AMENDMENT - MALICIOUS PROSECUTION (42 U.S.C. § 1983)

Against Smith, Newman, Fitzhugh, Hammond, Attaway, and City of Duncan

61. Plaintiff incorporates all allegations above.

62. To establish malicious prosecution: (1) defendant made, influenced, or participated in decision to prosecute; (2) lack of probable cause; (3) malice; and (4) favorable termination. Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).

63. Smith signed the affidavit; Newman, Fitzhugh, and Sgt. Smith provided vehicle information and approved the decision; Hammond as City Attorney approved or ratified despite constitutional defects and interest in suppressing investigation into his conflict; Attaway ratified through deliberate indifference.

64. No probable cause existed. Probable cause requires "facts sufficient to warrant a prudent person in believing the suspect committed an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975). No prudent person could believe testing door handles to verify security constitutes entering vehicles, manipulating controls, or criminal intent. The affidavit omitted material exculpatory facts identified in paragraph 48. Franks, 438 U.S. at 154. The Lori Adams notarization violated Oklahoma law, rendering the affidavit procedurally defective.

65. Defendants acted with malice. Malice is absence of probable cause plus improper motive. Awabdy, 368 F.3d at 1069. The improper motive: September 9 preparation, Lori Adams's conflict, three-month delay, timing after FOIA requests, mischaracterization of journalism, pattern of hostility, desire to suppress investigation.

66. Defendants are not entitled to qualified immunity. Groh v. Ramirez, 540 U.S. 551 (2004).

67. The City is liable under Monell for the policies described in paragraph 49.

COUNT III: CONSPIRACY (42 U.S.C. § 1985)

Against Smith, Newman, Fitzhugh, Hammond, Attaway, and Does 1-10

68. Plaintiff incorporates all allegations above.

69. Conspiracy requires: (1) agreement to violate constitutional rights; and (2) actual deprivation. Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).

70. Individual Defendants agreed to retaliate and prosecute for lawful conduct. Evidence of agreement: coordinated immediate response (multiple defendants provided vehicle information within twenty-four hours); Lori Adams's participation (confronted colleague September 8, notarized September 9 despite conflict); unified delay decision (required coordination with supervisors, Chief, City Attorney); strategic filing timing (coordination between law enforcement and City Attorney); unified false narrative (agreement among those who knew Mr. DeCASTRO identified as journalist investigating McReynolds); Hammond's dual motives (suppress investigation as City Attorney and as McAdams's conflicted counsel).

71. Conspiracy may be inferred from coordinated action. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). The coordination here—immediate preparation, Adams notarization despite conflict, three-month hold, precise FOIA timing—could not occur absent agreement.

COUNT IV: MONELL - FAILURE TO TRAIN (42 U.S.C. § 1983)

Against City of Duncan

72. Plaintiff incorporates all allegations above.

73. Municipal failure to train constitutes policy when it amounts to deliberate indifference. City of Canton v. Harris, 489 U.S. 378, 388 (1989). Deliberate indifference exists when need for training is obvious and failure likely results in violations. Connick v. Thompson, 563 U.S. 51, 61 (2011).

74. Duncan failed to train regarding: First Amendment rights (Irizarry established in 2022 that recording police is protected in Tenth Circuit); retaliation prohibition; probable cause requirements; Franks omissions; notary impartiality (Oklahoma law); public records obligations; conflicts of interest; mental health crisis response; harassment prevention.

75. The need for training is obvious—First Amendment auditing has been prominent for over a decade, Irizarry made law clear in Oklahoma's circuit, conflicts of interest are fundamental in legal ethics, mental health crisis intervention is recognized policing need.

76. Failure to train was the moving force. Properly trained personnel would have known: investigating McReynolds was protected; photographing vehicles was protected; testing security was journalism; seeking warrant for journalism was unconstitutional; holding charges strategically was retaliation; affidavit lacked probable cause; Adams should not notarize given her conflict.

77. Deliberate indifference is shown by: failure to discipline Adams after September 8 confrontation; failure to address McReynolds' pattern despite documented fabricated stops; failure to correct violations after Major Woods learned of them; tolerance for Hammond's conflict; approval of retaliatory prosecution.

COUNT V: MONELL - RATIFICATION (42 U.S.C. § 1983)

Against City of Duncan

78. Plaintiff incorporates all allegations above.

79. Ratification requires: (1) actual or constructive knowledge; and (2) deliberate choice to endorse. Hunter v. County of Sacramento, 652 F.3d 1225, 1233-34 (9th Cir. 2011).

80. Policymakers had knowledge: Major Woods knew of protected journalism investigating McReynolds, knew Adams unlawfully interfered, knew Mr. DeCASTRO reported findings; Chief Attaway knew or should have known about charges targeting nationally known journalist based on conduct in public lot reported to leadership; Hammond knew prosecution suppressed investigation into his own conflict.

81. Despite knowledge, policymakers endorsed violations: approved September 9 charges; permitted Adams notarization despite conflict; approved three-month hold; approved December filing after FOIA requests; failed to prevent, stop, discipline, correct, withdraw, or prevent future violations.

82. Coordination required for strategic delay—prepare September 9, hold three months, file after FOIA—required policymaker approval, demonstrating institutional strategy not individual action.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

**Declaratory Relief**

1. Declare Defendants violated First and Fourth Amendments;

2. Declare Information CM-2025-539 was initiated and maintained unconstitutionally;

3. Declare September 9 affidavit obtained through Franks omissions;

4. Declare Lori Adams notarization violated Oklahoma law rendering affidavit defective;

5. Declare three-month delay demonstrates retaliation and abuse of process;

6. Declare Duncan maintains unconstitutional customs of retaliating against those who investigate police;

**Injunctive Relief**

7. Issue TRO and preliminary injunction:

   a. Staying and enjoining enforcement of arrest warrant;

   b. Prohibiting arrest, detention, or prosecution based on September 8 conduct;

   c. Staying prosecution CM-2025-539 pending resolution;

   d. Enjoining retaliation for First Amendment activity;


8. Issue permanent injunction:

   a. Making temporary relief permanent;

   b. Requiring Duncan adopt policies protecting those who observe/photograph police;

   c. Requiring training on Irizarry and First Amendment rights;

   d. Requiring policies prohibiting retaliation against journalists filing FOIA requests;

   e. Requiring notary training on Oklahoma impartiality requirements;


**Monetary Relief**

9. Award compensatory damages for: constitutional violations, ongoing prosecution, threat of imprisonment, emotional distress, reputational harm, restriction of liberty, chilling of speech, suppression of investigations, economic losses, defense expenses;

10. Award punitive damages against Smith, Newman, Fitzhugh, Hammond, and Attaway individually;

**Additional Relief**

11. Award costs and attorneys' fees under 42 U.S.C. § 1988;

12. Award pre- and post-judgment interest;

13. Grant such other relief as the Court deems just.

**JURY DEMAND**

Plaintiff demands jury trial on all issues so triable.

Dated: December 18, 2025

Respectfully submitted,

_____

JOSE MARIA DeCASTRO, Pro Se

5350 Wilshire Blvd,
PO Box 36143
Los Angeles, California 90036

Telephone: (310) 963-2445

Email: chille@situationcreator.com

**VERIFICATION**

I, Jose Maria DeCASTRO, declare under penalty of perjury under the laws of the United States that I have read the foregoing Complaint and that it is true of my own knowledge except as to matters stated on information and belief, and as to those I believe them to be true.

Executed on December 18, 2025, at Los Angeles, California.

_____

JOSE MARIA DeCASTRO