UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

**JOSE MARIA DeCASTRO,**
Plaintiff,

v.   Case No. CV25-11981-SB(ADS)

**CITY OF DUNCAN, OKLAHOMA,** et al.,
Defendants.

*Jose DeCastro*
*5350 Wilshire Blvd*
*PO Box 36143*
*L.A. CA 90036*

FILED 2025 DEC 18 PM 3:30
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CA
LOS ANGELES

### DECLARATION OF JOSE MARIA DeCASTRO IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

I, Jose Maria DeCASTRO, declare under penalty of perjury under the laws of the United States of America:

1. I am the Plaintiff in this action and have personal knowledge of the facts stated herein.

2. I am a journalist operating the "Delete Lawz" YouTube channel with approximately 680,000 subscribers and approximately 10 million monthly views. My work focuses on police accountability, constitutional rights education, and government transparency.

3. On September 8, 2025, I traveled from Los Angeles, California to Duncan, Oklahoma specifically to investigate reports that Officer Darius McReynolds was systematically harassing Heather Chandler, a Duncan resident, through pretextual traffic stops. As I stated during my livestream from the Duncan Police Department: "This is Heather Chandler. It's the reason why we came today." I explained: "I came here from Los Angeles to try to use my reputation and my name to try to get this woman help."

4. Ms. Chandler had been pulled over three times in three months by Officer McReynolds. The third stop was particularly egregious: Officer McReynolds pulled her over on her bicycle, claiming she "put her feet down to stop" instead of using brakes. I later obtained Officer McReynolds' dash camera footage, which refuted this justification—Ms. Chandler had not put her feet down. Officer McReynolds fabricated the reason for the stop.

5. During my investigation at the Duncan Police Department's public parking lot on September 8, 2025, I observed unsecured AR-15 rifles plainly visible inside multiple patrol vehicles parked in areas accessible to the public. I documented these security failures through photographs and video recordings.

6. As part of my security investigation, I tested whether vehicle doors were locked by attempting to open them. All vehicles were locked. I did not gain entry to any vehicle, did not touch any property inside any vehicle, and did not damage any vehicle. At all times, my actions were undertaken solely for journalistic and public safety purposes, and not with any intent to steal, damage, or unlawfully access any vehicle or property.

(1)

7. I then met with Major Woods, a Duncan Police Department supervisor, and professionally reported the unsecured firearms I had observed. Major Woods acknowledged that the department "preferred" officers use AR-15 locks but indicated that leaving firearms unsecured in locked vehicles was within department policy. At no point during or after that meeting did Major Woods state that my conduct was unlawful, improper, or subject to criminal investigation.

8. During my visit, a civilian employee identified as "Miss Adams" (later identified as Lori Adams, a Duncan Police Department employee) confronted my colleague and demanded she stop photographing police vehicles. This occurred on September 8, 2025.

9. On September 9, 2025—one day after my investigation—Detective Suzannahe Smith signed a probable cause affidavit seeking my arrest. Upon information and belief, the affidavit was notarized by Lori Adams, the same Duncan Police Department employee who had confronted my colleague the day before.

10. Defendants did not file these charges on September 9, 2025. They held the affidavit for three months.

11. In October 2025, my investigation expanded to include the June 20, 2024 arrest of Anthony Lee McAdams by Duncan police. Public records I obtained showed that during the arrest, officers used baton strikes and K-9 deployment. Public records I obtained reflect that Mr. McAdams made statements indicating he was experiencing a mental health crisis at the time. My investigation further revealed that City Attorney David Hammond represents both the City of Duncan and Mr. McAdams in Mr. McAdams's criminal case arising from that arrest.

12. On October 4, 2025, I filed public records requests with the City of Duncan seeking information about the McAdams case, including body camera footage, arrest reports, and evidence logs.

13. On December 10, 2025—three months after Detective Smith's September 9 affidavit, and two months after my October 4 public records requests—Defendants filed criminal charges against me in Oklahoma state court (Case No. CM-2025-539), using the three-month-old affidavit.

14. I currently face an active arrest warrant based on Detective Smith's affidavit. The warrant is executable at any time. I cannot travel to Oklahoma to continue my investigations into Officer McReynolds' harassment of Ms. Chandler, the McAdams case, or City Attorney Hammond's conflict of interest without risk of immediate arrest.

15. The criminal charges have caused me significant harm, including: chilling of my First Amendment activities, inability to travel to Oklahoma for investigative journalism, reputational damage to my credibility as a journalist with approximately 680,000 subscribers, emotional distress from the threat of arrest and imprisonment, and economic harm to my journalism practice.

16. The videos and photographs I recorded on September 8, 2025 accurately depict the events described above. They are true and correct copies of what I personally observed and recorded and have not been altered.

17. The facts stated in the Complaint and Emergency Motion for Temporary Restraining Order are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2025, at Los Angeles, California.

_____
JOSE MARIA DeCASTRO